**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HECTOR FERRER and DAVID FERRER,** *by and through his legal guardian Hector Ferrer,*<br><br>    **Plaintiffs,**<br><br>v.<br><br>**LISA VON PIER,** *et al.***,**<br><br>    **Defendants.** | **Civil Action No. 18-0254 (ES) (CLW)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court are three motions to dismiss filed by defendant Cathy Tamburello (D.E. No. 48); defendants Carmen Diaz-Petti, Christine Norbut Beyer, Renetta Aikens, Yesnia Seda, and Hans Ayala (D.E. No. 50); and defendants Vincent McHale, Barbara Pinsak, and Teaneck Board of Education (D.E. No. 52) (collectively, "Defendants"). All three motions seek to dismiss plaintiffs Hector Ferrer and David Ferrer's ("Plaintiffs") amended complaint ("Amended Complaint") (D.E. No. 47 ("Am. Compl.")). The Court has considered the parties' submissions and decides these matters without oral arguments under Federal Rule of Civil Procedure 78(b). For the following reasons, the Court GRANTS Defendants' motions to dismiss.

**I.     BACKGROUND**

As the Court writes primarily for the parties, only a brief procedural history is provided. Plaintiffs filed this action on January 8, 2018, alleging that Defendants violated their rights protected under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as well as their rights protected under corresponding provisions of the New Jersey

Civil Rights Act. (*See* D.E. No. 1). Subsequently, Defendants filed their respective motions to dismiss the original complaint. (D.E. Nos. 8, 14, & 23).

The Court held a hearing on November 29, 2018, and issued an Order on December 3, 2018, granting Defendants' motions to dismiss the original complaint. (D.E. Nos. 43 & 46). Specifically, the Court's December 3, 2018 Order dismissed with prejudice claims based on the Fifth Amendment of the Constitution against all Defendants, as well as claims based on the Fourth Amendment against Tamburello, Pinsak, McHale, and the Teaneck Board of Education. (D.E. No. 46). Plaintiffs' remaining claims were dismissed without prejudice. (*Id.*).

Plaintiffs filed their Amended Complaint on January 2, 2019 (D.E. No. 47)[1], followed by Defendants' instant motions to dismiss the Amended Complaint (D.E. Nos. 48, 50, & 52).

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the burden is on the defendant to show that the plaintiff has not stated a facially plausible claim, *see Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

Determining whether there is "a plausible claim for relief will . . . be a context-specific task

---

[1] As discussed with more details in Section III(C), Plaintiffs' Amended Complaint replaced Lisa von Pier with Carmen Diaz-Petti, and replaced Allison Blake with Christine Norbut Beyer. *(Cf.* D.E. No. 1 ¶¶ 3–4 *with* Am. Compl. ¶¶ 3–4).

that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "All allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But a court does not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions."). In the Third Circuit, courts' inquiry into a Rule 12(b)(6) motion is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Finally, "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (citations and internal quotation marks omitted).

### III. ANALYSIS

Plaintiffs assert the following claims in their Amended Complaint: (i) First Count: § 1983 claims against Ayala, Seda, Aikens (collectively, the "Caseworker Defendants"), Tamburello, and Pinsak for violating the Fourth and Fourteenth Amendments (Am. Compl. ¶¶ 108–15); (ii) Second Count: § 1983 claims against Teaneck Board of Education, Pinsak (collectively, the "Teaneck

Defendants"), and Tamburello for violating the First Amendment (*id.* ¶¶ 116–23); (iii) Third Count: § 1983 claims against Diaz-Petti and Beyer for violating the Due Process Clauses of the Fourth and Fourteenth Amendments (*id.* ¶¶ 124–31)[2]; and (iv) Fourth Count: claims against the Caseworker Defendants, the Teaneck Defendants, and Tamburello for violating the New Jersey Civil Rights Act (*id.* ¶¶ 132–34).

As an initial matter, Plaintiffs' § 1983 claims against Tamburello and Pinsak based on the Fourth Amendment were dismissed with prejudice by the Court's December 3, 2018 Order. (D.E. Nos. 46 & 48). Because Plaintiffs do not dispute this issue (D.E. No. 68 at 22; D.E. No. 69 at 18), these claims are dismissed.

Although the "Parties" section of the Amended Complaint names Vincent McHale as a defendant, Plaintiffs assert no claim against him and do not make any allegations about him. (*See* Am. Compl. ¶ 10). In fact, Vincent McHale was not even included in the case caption of the Amended Complaint. Because no cause of action is asserted against Vincent McHale and the Amended Complaint clearly does not contain sufficient factual allegations to allow the Court to draw any reasonable inference that a claim against him is "plausible on its face," Vincent McHale is dismissed as a defendant. *See Twombly,* 550 U.S. at 570.

The Court now addresses the remaining claims count-by-count.

**A. First Count**

Plaintiffs claim that their rights to family integrity protected under the Due Process Clause of the Fourteenth Amendment were violated by Tamburello and Pinsak through the "investigation,

---

[2] The header of Third Count in the Amended Complaint includes claims based on the Fourth and Fourteenth Amendments, and is titled "42 U.S.C.A. §1983 - **VIOLATION OF FOURTH AND FOURTEENTH AMENDMENT RIGHTS** BY DEFENDANTS CARMEN DIAZ-PETTI AND CHRISTINE NORBUT BEYER." (emphasis added). However, the paragraphs underneath the header do not include any claim based on the Fourth Amendment. For purposes of completeness, the Court assumes that Third Count included claims based on the Fourth and the Fourteenth Amendments against Carmen Diaz-Petti and Christine Norbut Beyer.

4

detention and interrogation without credible evidence of child abuse and neglect." (Am. Compl. ¶¶ 108–115). In response, Tamburello and Pinsak argue, *inter alias,* that Plaintiffs fail to plead sufficient facts to support a conspiracy claim under 42 U.S.C. § 1985(3), which is the only colorable claim under the Fourteenth Amendment that is seemingly asserted against Tamburello and Pinsak. (D.E. No. 48-2 at 14–15; D.E. No. 52-7 at 20–21). The Court agrees with the defendants. Because the Court finds this argument dispositive as to Plaintiffs' claims against Tamburello and Pansak based on the Fourteenth Amendment, the Court will not reach the defendants' other arguments.

Plaintiffs' counsel conceded during oral argument that Tamburello and Pinsak did not conduct the investigation, detention, or interrogation of Plaintiffs. (*See, e.g.,* D.E. No. 49 at 43:14–18). Instead, Plaintiffs allege that Tamburello and Pansak "caused a child protective services investigation to be instituted" by, as to Tamburello, calling the Department of Child Protection and Permanency (the "DCPP") to report the educational neglect, and, as to both defendants, making statements to the DCPP during its investigation. (*See* Am. Compl. ¶ 110). Plaintiffs allege that Tamburello and Pansak caused the DCPP investigation despite knowing that David Ferrer was beyond the age of compulsory education, and thus not subject to an investigation for educational neglect.[3] (*Id.*). Plaintiffs do not assert, nor could they, that the mere call placed by Tamburello to the DCPP, or the subsequent statements Tamburello and Pinsak made to the DCPP, is independent basis for violating the Fourteenth Amendment, regardless of whether the subsequent investigation, detention, or interrogation was conducted. Rather, Plaintiffs alleged that "these Defendants

---

[3] Plaintiffs also argue, but improperly in their opposition brief, that Tamburello and Pinsak "fabricated evidence in conspiracy . . . for the purposes of depriving Plaintiffs of their [c]onstitutional [r]ights to the integrity of their family." (D.E. No. 68 at 30–31; D.E. No. 69 at 32). Not only is this allegation not raised in the Amended Complaint, but, as the Court discusses below, even assuming the allegation is true and properly alleged in the Amended Complaint, Plaintiffs still fail to set forth facts that Defendants conspired for the purpose of depriving Plaintiffs' constitutional rights.

5

conspired to institute an investigation against the Plaintiffs," and violated their rights protected under the Fourteenth Amendment. (Am. Compl. ¶ 110).

In order to properly plead a conspiracy claim under § 1985(3), a plaintiff must set forth facts that plausibly allege that defendants had "an understanding or agreement to conspire" against the plaintiff. *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008). An agreement means that there must be a "meeting of the minds." *Id.* Here, the Amended Complaint falls woefully short of meeting the standard under *Iqbal* and *Twombly* and did not plead any factual allegation that an actual agreement existed among Defendants, or any subset of Defendants, for the purpose of depriving Plaintiffs of their constitutional rights. Plaintiffs' Fourteen Amendment claims are thus dismissed against Tamburello and Pinsak.

As to the claims against the Caseworker Defendants, Plaintiffs allege that (i) the Caseworker Defendants violated Plaintiffs' rights to family integrity protected under the Fourteenth Amendments by conducting a DCPP investigation for educational neglect while knowing that the child was beyond the age of compulsory education (Am. Compl. ¶ 110); (ii) Plaintiffs' rights to procedural due process were violated when the Caseworker Defendants failed to advice Plaintiffs of their rights under the Fourth and Fourteenth Amendments during the educational neglect investigation (*id.* ¶ 113); (iii) Plaintiffs' rights to procedural due process were violated when the DCPP failed to notify Hector Ferrer of his right to appeal the DCPP's administrative findings (*id.* ¶ 114).

The Caseworker Defendants argue, *inter alia*, that they are entitled to qualified immunity, which shields them from liability even if they violated Plaintiffs' constitutional rights. (*See* D.E. No. 50-1 at 18–21). Specifically, the Caseworker Defendants argue that Plaintiffs fail to

demonstrate that the constitutionally protected rights that were allegedly violated were clearly established so as to put the Caseworker Defendants on notice. (*See id.* at 18).

Qualified immunity is not just immunity from liability, but also "immunity from suit." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It protects all government officials "but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Whether a defendant is entitled to qualified immunity is a two-prong analysis: a court must determine if the plaintiff sufficiently alleges that (i) the defendant "violated a constitutional right," and (ii) "the right that was violated was clearly established." *Curley v. Klem,* 499 F.3d 199, 206–07 (3d Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001). In other words, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) (quoting *Mitchell,* 472 U.S. at 526). Moreover, courts should exercise "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Accepting the factual allegations in the Amended Complaint as true, the crux of Plaintiffs' argument is this: when the Caseworker Defendants pursued the investigation, the lawsuit, and the interrogation against Plaintiffs while knowing that David Ferrer was beyond the age of compulsory education, the Caseworker Defendants violated the "clearly established" state law and DCPP's own policy, or at least acted without authority under the state law. (*See, e.g.*, D.E. No. 67 at 23). This, Plaintiffs allege, constitutes investigation "without reasonable suspicion" under *Croft v. Westmoreland County Children & Youth Services*, and is a violation of their "clearly established" rights to family integrity protected under the Fourth and Fourteenth Amendments. 103 F.3d 1123,

7

1126 (3d Cir. 1997) (citing *Lehr v. Robertson*, 463 U.S. 248, 254–56 (1983); (*see* D.E. No. 67 at 4).

Plaintiffs are wrong on two grounds. First, to overcome qualified immunity defense, the "clearly established right must be the federal right on which the claim for relief is based." *Doe v. Delie*, 257 F.3d 309, 318–19 (3d Cir. 2001) (rejecting the prisoner-plaintiff's argument that "prison officials could not have been acting 'reasonably' when they were in direct violation of a clear statute" and finding qualified immunity for the prison officials). "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). This is because "[t]hese officials are subject to a plethora of rules, often so voluminous, ambiguous, and contradictory, and in such flux that officials can only comply with or enforce them selectively." *Davis*, 468 U.S. at 196 (citing PETER H. SCHUCK, SUING GOVERNMENT 66 (1983)). It is, therefore, irrelevant whether New Jersey law clearly establishes the age limit for compulsory education or educational neglect. The Caseworker Defendants do not forfeit qualified immunity from suit unless they violated a clearly established federal law when they conducted the investigation on Plaintiffs. *See Doe*, 257 F.3d at 319.

Second, the allegedly violated constitutional right must be "'clearly established' in a more particularized, and hence more relevant, sense," so as to give the Caseworker Defendants sufficient notice that what they were doing violates that right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Plaintiffs appear to allege that the fundamental constitutional rights at issue are the right "to be free from child abuse and neglect investigations absent credible evidence of imminent abuse and neglect." (Am. Compl. at 17 (ECF pagination)[4]; *see also* D.E. No. 67 at 38). This articulation

---

[4] The quoted language appears in the header under "First Count" and nowhere else. The Court notes that Plaintiffs' counsel fails to follow the Court's explicit instruction to paginate the Amended Complaint. (D.E. No. 49

8

of the "clearly established right" is too broad for purposes of qualified immunity analysis. *See Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016), *as amended* (Mar. 21, 2016).

In *Mammaro*, the parent-plaintiff similarly relied on *Croft* and contended that she had a clearly established right "to be free from the temporary removal of her child unless there is some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." 814 F.3d at 169 (citing *Croft*, 103 F.3d at 1126). The Third Circuit held that "[t]his definition is too broad for purposes of qualified immunity." *Id.* Instead, the plaintiff "must show that the law was so well established at that time a reasonable caseworker would have understood that temporarily removing a child in those circumstances would violate substantive due process." *Id.* at 170. In concluding that "there was no consensus of authority" that the DCPP's temporary removal of the child violated the substantive due process, the Third Circuit based its holding on that "the [Supreme] Court has never found a substantive due process violation when state agencies temporarily remove a child, whatever the circumstances of the removal." *Id.*

Here, too, Plaintiffs cite no case, and the Court has found none, where the Supreme Court or the Third Circuit held that conducting a child neglect investigation is a violation of the Fourth or the Fourteenth Amendment, regardless of the circumstances that led to the investigation. It thus cannot be said that Caseworker Defendants were put on notice that their conduct was constitutionally prohibited at the time they conducted the child educational neglect investigation against Plaintiffs.

---

at 95:1–3) ("You are going to, obviously, as an officer of the court, make sure you follow our instructions, which is . . . first of all, complaints are to be paginated.").

In the same vein, Plaintiffs fail to allege that the law is clearly established that they are entitled to a "*Miranda* type" warning in child protective services investigation or a notification as to the right to appeal the DCPP's administrative finding. Indeed, Plaintiffs' counsel admitted during oral argument that "there's no *Miranda* case that applies to . . . the child protective services caseworkers." (D.E. No. 49 at 82: 4–7). Plaintiffs also cited no law, federal or state, requiring the caseworkers to notify Hector Ferrer of his right to appeal the DCPP's administrative finding. Absent any legal support, Plaintiffs fail to show that the Caseworker violated any clearly established rights protected under the Due Process Clauses of the Fourth and Fourteenth Amendments.

As such, all claims under First Count are dismissed.

**B. Second Count**

Plaintiffs assert First Amendment retaliation claims against the Teaneck Defendants and Tamburello. Specifically, Plaintiffs allege that the Teaneck Defendants retaliated against Plaintiffs and "acted with deliberate indifference by instituting a policy" that no individual busing will be provided to students, which "would only affect David Ferrer." (Am. Compl. ¶ 121). As to Pinsak, who is among the Teaneck Defendants, Plaintiffs' allegation is seemingly based on additional retaliatory conduct that Pinsak "contributed to the unconstitutional investigation for Educational Neglect" by making false statements to the DCPP. (*Id.* ¶ 122). Finally, as to Tamburello, the allegedly retaliatory conduct was that she "referred Hector Ferrer for Educational Neglect." (*Id.* ¶ 123). These claims are dismissed for failure to state a claim that is plausible on its face. *See Iqbal* at 678.

To plead a First Amendment retaliation claim, a plaintiff must present facts sufficient to plausibly show three elements: "(1) constitutionally protected conduct, (2) retaliatory action

sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.,* 463 F.3d 285, 296 (3d Cir. 2006). With regard to the third element, the requirement is a "but-for" causation. *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). Ways to allege "but-for" causation include: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; (2) a pattern of antagonism coupled with timing; or (3) other evidence gleaned from the record as a whole." *Kriss v. Fayette Cty.*, 504 F. App'x 182, 188 (3d Cir. 2012) (internal quotation marks omitted). Plaintiffs fail to allege, let along demonstrate, any theory to support the inference of "but-for" causation.

The Amended Complaint alleged the following events that seemingly triggered the retaliation from the Teaneck Defendants: (i) Hector Ferrer's assertions, made at various public meetings held in Clifton and Teaneck from 2013 to 2015, that the Teaneck school district, by and through its attorneys, was engaged in wrongful conduct(*see* Am. Compl. ¶¶ 22–23 & 121); (ii) the litigation where the Teaneck Board of Education challenged the residency of Plaintiffs (*see id.* ¶¶ 28 & 121); and (iii) the litigation between Hector Ferrer and the Teaneck Board of Education at or around the start of the 2015 to 2016 school year regarding the Teaneck Board of Education's decision to terminate all transportation for David Ferrer (*see id.* ¶¶ 32 & 121).[5]

During the oral argument held on November 29, 2018, the Court discussed the original complaint with Plaintiffs' counsel in painstaking detail and pointed out its deficiencies claim-by-

---

[5] Throughout their Amended Complaint, Plaintiffs fail to follow the Court's explicit instruction to include in their Amended Complaint a "recitation of [ ] paragraphs" that lend factual supports to the various elements of each claim. (*See* D.E. No. 49 at 94:20–95:23) (stating "I'm going to have counts against particular defendants, and I'm going to have the recitation of which paragraphs are applicable that supports the various elements of each claim."). The Court, therefore, can only speculate as to the factual bases for each of the claims asserted, which itself is sufficient ground for dismissal. *See Tombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.").

claim. With regard to the First Amendment claims, the Court noted that the original complaint fell woefully short of establishing a "but-for" causation between Plaintiffs' constitutionally protected activities and the allegedly retaliatory act. (*See, e.g.*, D.E. No. 49 at 13:21–31:13). For example, the Court warned Plaintiffs that the original complaint did not explain how the speech Hector Ferrer made at a Clifton townhall meeting in 2014 is "even related to the September 16th event" that occurred a year later. (*See Id.* 13:14–15:3; 28:7–16). The original complaint also failed to even assert that the defendants were aware of the speech that occurred in Clifton. (*Id.* at 17:11–18:10; 27:16–28:5).

None of these deficiencies were cured in the Amended Complaint[6] and thus, Plaintiffs still do not allege "the elements of retaliatory animus as the cause of injury." *See Mirabella v. Villard,* 853 F.3d 641, 651 (3d Cir. 2017) ("Any plaintiff charging official retaliatory action must prove the elements of retaliatory animus as the cause of injury, and the defendant will have the opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus.") (quoting *Hartman v. Moore,* 547 U.S. 250, 260–61 (2006)) (internal quotation marks and alterations omitted). The majority of Hector Ferrer's public complaints regarding the Teaneck Board of Education and its lawyers occurred more than a year before David Ferrer was placed on the school bus with four other students. (*See id.* ¶¶ 22–23 & 36). The most recent public speech allegedly occurred in January, 2015, eight months before the September 16th incident. (*Id.* at 22). Similarly, it is unclear when the litigation regarding Plaintiffs' residency started and how it caused the allegedly retaliatory act. (*See id.* ¶ 28) (alleging

---

[6] For example, the Court specifically suggested that Plaintiffs' counsel should include allegations that the Teaneck Defendants were aware of the speech Hector Ferrer made in Clifton. (D.E. No. 49 at 27:25–28:8) ("The Court: So I assume, at some point, in a future amended complaint you're going to say that based on widely-read publication, it goes without saying that members of the Teaneck group read it. Or you're going to say something to the extent that people from The Machado Law Group shared with them, upon information and belief, right? Mr. Rosellini: Yes."). No such amendment was made in the Amended Complaint.

merely that the litigation "was pending in September of 2015 and is still ongoing").  The Amended Complaint thus fails to allege how these two events could plausibly support an unusually suggestive temporal proximity and Plaintiffs do not allege causation under other theories.  *See Kriss*, 504 F. App'x at 188 (noting that the Court has found "no case where a gap of more than even two months was found to be unusually suggestive").

The only event that is arguably within temporal proximity is the litigation before the administrative law judge that occurred shortly before the 2015 to 2016 school year started.  (Am. Compl. ¶ 32).  However, that litigation was initiated because the school decided to cancel David Ferrer's bus altogether, which Plaintiffs do not argue is retaliatory.  (*See id.* ¶¶ 32 & 121 (stating that the allegedly retaliatory act is the institution of "a policy that [Teaneck Board of Education] would not provide individual busing to students, a policy which would only affect David Ferrer"). Plaintiffs thus fail to explain how the lawsuit is a but-for causation of the Teaneck Defendants' decision to bus David Ferrer with other students, when the Teaneck Defendants' non-retaliatory plan before the lawsuit was more intrusive.  *See Kriss*, 504 F. App'x at 188 (finding that "insofar as [the allegedly retaliatory] activities occurred before [the lawsuit], they are at odds with the notion that Defendants retaliated against [the plaintiffs] because they filed their lawsuit").

As to the First Amendment retaliation claims against Pinsak based on her contribution to the "unconstitutional investigation . . . by making false statements to [DCPP]," Plaintiffs fail to allege what protected activities triggered the allegedly retaliatory actions.  (*See* Am. Compl. ¶ 121).  To the extent Plaintiffs allege that the same "public complaints" and "litigations" discussed above triggered retaliatory action from Pinsak, the claim, too, fails to allege a but-for causation between Plaintiffs constitutionally protected activities and the allegedly retaliatory act.  *See Kriss*, 504 F. App'x at 188.

Similarly, as to the First Amendment retaliation claims against Tamburello, it is unclear what "lawful complaints against New Bridges School" the Amended Complaint references. (Am. Compl. ¶ 123). Because the Court is unable to ascertain whether Plaintiffs engaged in activities protected by the First Amendment and whether those activities caused Tamburello's allegedly retaliatory act, the claims against Tamburello is dismissed.

The Second Count based on the First Amendment violations is thus dismissed in its entirety against all defendants under Federal Rule of Civil Procedure 12(b)(6). *See Iqbal*, 556 U.S. at 678.

## C. Third Count

Plaintiffs assert § 1983 claims against Diaz-Petti and Beyer for violating Plaintiffs' rights to due process protected under the Fourth and Fourteenth Amendments of the Constitution. (*See* Am. Comp. ¶¶ 124–31). Because the claims against Diaz-Petti and Beyer are merely based on their managerial or supervisory roles and are not supported by any specific facts, they fail to meet the pleading standard under *Twombly* and *Iqbal*. *Twombly*, 550 U.S. 544; *Iqbal,* 556 U.S. 662.

Indeed, the allegations dismissed in *Iqbal* resemble the allegations against Diaz-Petti and Beyer. Specifically, Iqbal sued the then-Attorney General Ashcroft and the then-FBI Director Muller for the conduct of FBI agents because Ashcroft and Mueller "each knew of, condoned, and willfully and maliciously agreed to subject [Iqbal] to harsh conditions of confinement as a matter of policy." *Iqbal*, 556 U.S. at 669. In fact, Iqbal's factual allegations were more detailed than the instant Amended Complaint, because Iqbal alleged the roles Ashcroft and Mueller played in creating and executing the policy. *Id.* at 681. Specifically, Iqbal alleged that Ashcroft was that policy's "principal architect" and that "Mueller was instrumental" in its adoption and execution. *Id.* at 68081. The Supreme Court nevertheless dismissed the claims against Ashcroft and Mueller because they were "bare assertions" that are "conclusory and not entitled to be assumed true." *Id.*

at 681; *see also Kriss*, 504 F. App'x. at 187 (dismissing First Amendment retaliation claims against the county commissioner and the director of zoning, where the claims were based merely on the allegation that "they directed others to engage in unconstitutional behavior").

Here, the claim asserted against Diaz-Petti is based on her official capacity as Director of the DCPP (*id.* ¶¶ 3 & 125); and the same claim against Beyer is based on her official capacity as the Commissioner of Department of Children and Families (the "DCP") (*id.* ¶¶ 4 & 125). Plaintiffs allege that Diaz-Petti and Beyer "established through tacit authorization or explicit instruction a policy or custom of allowing [DCPP] workers to commit abuse of process." (Am. Compl. ¶ 128). Yet the Amended Complaint is devoid of any supporting factual allegations as to the existence of such "policy or custom," or Diaz-Petti's and Beyer's involvement regarding such policy or custom. It is indeed telling that Plaintiffs' original complaint asserted the same claims against the former Director of the DCPP, Lisa Von Pier, and the former Commissioner of the DCP, Allison Blake, and similarly alleged no specific supporting facts. (D.E. No. 1 ¶¶ 96–103). Absent any supporting facts, Plaintiffs' claims against Diaz-Petti and Beyer are insufficient and is dismissed under the Federal Rule of Civil Procedural 12(b)(6). *See Iqbal*, 556 U.S. at 678.

### D. Fourth Count

Because the Court dismisses all federal claims, the Court declines to exercise supplemental jurisdiction over any intended state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction").

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. As noted above, despite the fact that the Court spent over two hours discussing with Plaintiffs the obvious

deficiencies in the original complaint (D.E. Nos. 43 & 49), and that the Court placed Plaintiffs on notice that this would be their final bite at the proverbial apple (D.E. No. 46), Plaintiffs' Amended Complaint did little to address the pleading deficiencies. As such, the Court finds that further amendment would not only be futile, but would needlessly waste scarce judicial resources and unfairly burden Defendants. *See, e.g.*, *Brown v. Cantineri*, No. 14-6391, 2017 WL 481467, at *2 (D.N.J. Feb. 6, 2017) ("Because I have already given [Plaintiff] one opportunity to amend, this dismissal is with prejudice."); *accord Foster v. Raleigh*, 445 F. App'x 458, 460 (3d Cir. 2011); *Venditto v. Vivint, Inc.*, No. 14-4357, 2015 WL 926203, at *15 (D.N.J. Mar. 2, 2015); *Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, No. 13-1586, 2015 WL 502039, at *7 (D.N.J. Feb. 5, 2015). Accordingly, Plaintiffs' Amended Complaint is dismissed with prejudice. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**